# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 25, 2011 Session

## STATE OF TENNESSEE v. GRETA COOPER

**Appeal from the Criminal Court for Campbell County**
**No. 14172     E. Shayne Sexton, Judge**

---

**No.  E2011-00590-CCA-R3-CD - Filed March 20, 2012**

---

Appellant, Greta Cooper, was indicted along with two codefendents for multiple counts of theft of property and forgery.  After a jury trial, Appellant was convicted of eight counts of theft of property valued over $500, three counts of theft of property valued over $1,000, one count of theft of property valued over $10,000,[1] and twelve counts of forgery.  As a result of the convictions, Appellant was sentenced to an effect sentence of three years, to be served as six months in confinement followed by six years on probation.  After the denial of a motion for new trial, Appellant appealed.  On appeal, she asserts that the trial court improperly excluded a statement made by the victim to law enforcement that he gave Appellant the money which was the subject of her theft convictions.  We determine that Appellant failed to properly raise the issue in a motion for new trial.  Therefore, the issue is waived absent a showing of plain error.  After a review of the record, we decline to review the issue for plain error because the trial court did not breach a clear and unequivocal rule of law.  Specifically, we agree with the trial court's determination that the statement made by Lonzia Taylor was not admissible as a statement against interest because it was made under circumstances which render it unreliable.  Accordingly, the judgment is affirmed.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

D. Brent Gray, Jacksboro, Tennessee, for the appellant, Greta Cooper.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; William P. Phillips, District Attorney General; and Michael O. Ripley, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]This conviction was later dismissed.

## OPINION

### *Factual Background*

In July of 2009, Appellant, Tamara Harness, and Bonnie Cooper were named in a multi-count indictment for various counts of theft of property and forgery. Specifically, Appellant was indicted on one count of theft of property valued under $500, nineteen counts of theft of property valued over $500, seventeen counts of theft of property valued over $1,000, and one count of theft of property valued over $60,000.[2] Co-defendant Bonnie Cooper was indicted with two counts of theft of property valued over $1,000 and three counts of forgery. Co-defendant Tamara Harness was indicted with one count of theft of property valued over $10,000.

At trial, the State presented evidence that Appellant was a caregiver for an elderly gentleman, Lonzia Taylor, between September 2007 and January 2009. According to the State, Appellant cashed a number of checks, totaling over $30,000, from an account that the victim shared with his daughter, Brenda Hackworth. In April of 2007, Ms. Hackworth became increasingly concerned about Mr. Taylor's ability to care for himself. Mr. Taylor had undergone double knee replacement surgery and became forgetful.

In December of 2008, Mr. Taylor's physician, Dr. James Farris, saw Mr. Taylor in his office. Dr. Farris had been Mr. Taylor's physician since 1983. Mr. Taylor asked Dr. Farris to prepare a letter indicating that he was of sound mind and body. Dr. Farris declined to write the letter after administering a mini-mental examination to Mr. Taylor. According to the doctor, Mr. Taylor was already suffering from "moderate to moderately severe Dementia." After the exam, the doctor performed a CT scan, which revealed "moderately severe cerebral and cerebella atrophy," or a shrinkage of the brain cells. Mr. Taylor was placed on medication.

In January of 2009, Mr. Taylor presented a note to Dr. Farris asking for a competency evaluation. Dr. Farris offered to send Mr. Taylor to a neurologist, but Mr. Taylor declined. In March of that same year, Dr. Farris drafted a letter concerning Mr. Taylor's ability to manage his financial affairs.

In March of 2009, the Department of Human Services ("DHS") received a referral regarding Mr. Taylor. The origination of the referral is unclear from the record. DHS is

---

[2]This charge was later reduced to one count of theft of property valued over $10,000.

responsible for investigating the alleged physical, sexual, and/or financial exploitation and neglect of the elderly. After this time, the State sought to prevent Appellant from having any contact with Mr. Taylor.

In May of 2009, Mr. Taylor was evaluated by Dr. Odacir Oliveira, a geriatric practitioner and expert in medical psychology, at the request of DHS. Dr. Oliveira performed an evaluation and reviewed the CT scans taken by Dr. Farris. Mr. Taylor scored poorly on the examination, making only a seventeen out of thirty. In Dr. Oliveira's opinion, Mr. Taylor was functioning at fifty percent mental capacity at the time of the evaluation. Further, Dr. Oliveira determined that Mr. Taylor was not properly feeding himself or taking his prescribed medications. Mr. Taylor insisted that he was able to manage his own finances but, when asked, was unable to perform simple addition and subtraction.

After the evaluation, Dr. Oliveira's opinion was that Mr. Taylor's "disease" started in 2004 or 2005 and that by June of 2007, Mr. Taylor was incapable of managing his own affairs.

In June of 2009, Appellant signed an order in which she agreed to have no further contact with Mr. Taylor. That order read:

> It is clearly shown that the rights of the Plaintiff, State of Tennessee, Department of Human Services are being, or will be, violated by the conduct of the Defendants and that the Defendants have exploited Lonzia Taylor and the Plaintiff will suffer immediate and irreparable harm to its ability to carry out its statutory right and duty to protect the adult citizens of Tennessee from abusive, negligent or exploitive caretakers under the provisions of Tennessee Code Annotated §§ 76-6-101 et seq. The Defendants should, therefore, be permanently enjoined from providing care for Lonzia Taylor and/or from telephoning, contacting, or otherwise communicating with Mr. Taylor, directly or indirectly or coming about Mr. Taylor for any purpose.

Ms. Hackworth became conservator of Mr. Taylor's estate in July of 2009 after he was declared incompetent to manage his own affairs. In August of 2009, Mr. Taylor moved into an assisted living facility.

The State's proof at trial was that Appellant cashed a number of checks, totaling over $30,000, from an account that the victim shared with Ms. Hackworth. Appellant's actions were discovered when she tried to cash a check at the drive-thru of First Volunteer Bank, where the victim had a checking account, and there were insufficient funds in the account. The teller informed her supervisor, Cindy Reynolds, of the situation. Ms. Reynolds reviewed

the account and made the determination that the account activity was somewhat abnormal. The bank manager was informed, and Ms. Hackworth was notified. Ms. Hackworth was shocked to learn that the account was low on funds.

The situation was investigated by Detective Jason Henegar. Ms. Hackworth supplied the victim's check register. The register did not contain any notations for checks written by the victim to Appellant. When Detective Henegar interviewed Appellant, she admitted that she signed some of the checks.

The State presented additional evidence with regard to how Appellant was able to get money from Mr. Taylor. They introduced a picture of Appellant wearing lingerie as well as a bottle of Viagra with some pills missing.

The defense utilized the testimony of handwriting expert Dr. Larry Miller from East Tennessee State University. He reviewed all of the checks that were cashed and opined that Mr. Taylor had signed all of the checks. Dr. Miller noted that some of the checks had been altered or changed after they were initially written. Dr. Miller testified that the changes on some of the checks were consistent with Mr. Taylor's handwriting.

At the conclusion of the proof, Appellant was convicted of eight counts of theft of property valued over $500, three counts of theft of property valued over $1,000, one count of theft of property valued over $10,000,[3] and twelve counts of forgery. As a result of the convictions, Appellant was sentenced to an effective sentence of three years, to be served as six months in confinement followed by six years on probation.

Appellant filed a motion for new trial in which she argued that the State failed to present sufficient evidence. At the hearing on the motion, defense counsel raised the additional issue regarding the exclusion of Mr. Taylor's statement from evidence. Counsel for the defense did not file an amended motion for new trial. The State argued that the issue was waived because it was not included in a written motion for new trial. The trial court denied the motion for new trial, determining that the evidence was sufficient and that there was no mechanism by which the statement of Mr. Taylor could have been admitted at trial due to his incompetence. Appellant filed a timely notice of appeal.

*Analysis*

On appeal, Appellant insists that the trial court erred by excluding as hearsay an audio recording of the victim's statement that he gave Appellant the money which was the subject

---

[3]This conviction was later dismissed.

of her theft convictions. Specifically, Appellant argues that the trial court abused its discretion in excluding the audio recording because Mr. Taylor was "unavailable" to testify at trial due to his dementia. Therefore, the statement was admissible as a statement against interest under Tennessee Rule of Evidence 804(b) because the statement exonerated Appellant. The State, on the other hand, argues that Appellant has waived the issue for failing to present it in a written motion for new trial. Additionally, the State contends that Appellant is unable to establish plain error in the record that would provide relief.

Initially, we must examine the State's argument that this issue is not properly before this Court. As noted by the State, Appellant did not raise any issue with regard to the exclusion of Mr. Taylor's statement in a written motion for new trial, as required by Tennessee Rule of Appellate Procedure 3(e). That rule provides, in pertinent part:

> [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3.

Additionally, "[a] motion for a new trial shall be *in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered*. The court shall liberally grant motions to amend the motion for new trial until the day of the hearing on the motion for a new trial." Tenn. R. Crim. P. 33(b) (emphasis added). Further, a trial court loses jurisdiction with the filing of a notice of appeal. *See State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996). In the case herein, Appellant raised the issue orally at the hearing on the motion for new trial but failed to reduce the issue to writing or submit an amended motion for new trial within thirty days. Therefore, we are precluded from considering the issue raised by Appellant on appeal unless it rises to the level of plain error.

In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *See State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting this Court's plain error test set forth in *State v. Adkisson*, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)); *see also* Tenn. R. Crim. P. 36(b).

Appellant complains that the trial court improperly excluded the audio recording of Mr. Taylor's statement as hearsay because it falls under an exception to the rule against admitting hearsay evidence. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). "Hearsay is not admissible except as provided by these rules or otherwise by law." Tenn. R. Evid. 802. Tennessee Rules of Evidence 803 and 804 provide exceptions to the general rule of inadmissibility of hearsay.

As applicable to the case herein, unavailability of a witness is defined in Tennessee Rule of Evidence 804. It includes instances in which the declarant:

> (1) is exempted by ruling of the court on the grounds of privilege from testifying concerning the subject matter of the declarant's statement; or
>
> (2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or
>
> (3) demonstrates a lack of memory of the subject matter of the declarant's statement; or
>
> (4) is unable to be present or to testify at the hearing because of the declarant's death or then existing physical or mental illness or infirmity;
>
> (5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process; or
>
> . . . .
>
> A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.

Tenn. R. Evid. 804(a).

Rule 804(b)(3) of the Tennessee Rules of Evidence states:

> (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(3) Statement Against Interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, . . . , that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

It is up to the trial court to determine whether a statement is believable, and this Court will not overturn the trial court's decision in this regard unless there is an abuse of discretion. *See State v. James Blanton*, No. 01C01-9307-CC-00218, 1996 WL 219609, at \*33-34 (Tenn. Crim. App., at Nashville, Apr. 30, 1996).

To begin our analysis, we must first review the trial court's admission of the hearsay evidence with the de novo standard of review. At trial, Appellant sought to introduce Mr. Taylor's audio statement to police after Appellant's arrest. Appellant argued that the statement was made prior to the formal declaration of incompetence and that in the statement, Mr. Taylor "states clearly and reliably that he gave the money to the defendant." During discussion on the matter, the parties agreed that Mr. Taylor was unavailable as a witness. At the time of trial, Mr. Taylor was living in an assisted living facility and suffering from dementia.

We agree with the parties that the statement is hearsay. It is an out-of-court statement made by someone other than the declarant that is offered for the truth of the matter asserted.[4] Additionally, we agree that the witness was unavailable at the time of trial.

Next we must determine if the statement fits within any of the recognized hearsay exceptions, in other words, does Mr. Taylor's audio interview qualify as a statement against interest. The trial court determined that the statement was not actually a statement against the victim's pecuniary interests, because of the victim's incompetence, and, moreover, the fact that the statement was unreliable. Further, the trial court determined that the victim probably did not realize that the statement was against his own interest at the time it was made.

In order to determine whether the statement was a statement against interest and, therefore, admissible despite the fact that it was hearsay, we look to the "cornerstone" of the exception for statements against interest. To qualify, it should appear that:

---

[4]Appellant does not contend that Mr. Taylor's statement was offered to show its effect on Appellant's state of mind, but rather that Mr. Taylor made an actual gift of the money to Appellant.

[A] reasonable person similarly situated to the declarant would not have made the statement unless the reasonable person believed it was true. In turn, this statement means that a reasonable declarant would have realized it was against his or her interest. The important time is when the statement was made.

Rule 804(b)(3) does not specifically provide that the declarant must have personally known that the statement was against his or her interests when it was made. However, this knowledge is the reason a hearsay statement is viewed as sufficiently reliable to be admitted, and the evidence should not be admitted if it is established that the declarant did not know that the statement was harmful. For example, if the declarant actually believed that he or she was saying something that would be helpful, reliability is questionable and the statement should not be admitted under this hearsay exception.

Neil P. Cohen et al., *Tennessee Law of Evidence*, § 8.36[5], at 8-161 (5th ed. 2005). Thus, our courts have held that a hearsay statement can only be admitted if the circumstances surrounding the statement are such that the statement is sufficiently reliable. *State v. Adrien Porterfield,* No. W2006-00169-CCA-R3-CD, 2007 WL 3005349 (Tenn. Crim. App., at Jackson, Oct. 15, 2007).

In the case herein, we determine that the statement was not sufficiently reliable. There was testimony at trial that Mr. Taylor was suffering from mild to moderate Dementia in December of 2008, prior to his statement to authorities. Thus, the hearsay statement was not admissible. Therefore, in our view, Appellant has failed to show that the trial court violated a clear and unequivocal rule of law with respect to the exclusion of the evidence as hearsay. In other words, plain error review is not necessary. Appellant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE